[Civ. No. 31237.   Second Dist., Div. One.   Dec. 22, 1967.]

JOHN J. McHALE et al., Plaintiffs and Appellants, **v.** WELTON TOLLET HALL, Defendant and Respondent.

Heily & Blase, DeWitt D. Blase, William L. Boyes and Edward L. Lascher for Plaintiffs and Appellants.

Halde & Battin and Henry E. Kappler for Defendant and Respondent.

FOURT, J.—This is an appeal from a judgment in favor of defendant in a rear-end vehicle collision case. John and Mary E. McHale, husband and wife, were the parents of Bridget, who was about ten (10) years of age at the time of the collision in question. Each of the three brought an action for damages resulting from the accident hereinafter described. In a jury trial a verdict for defendant was returned and this appeal followed.

A résumé of some of the facts is as follows:

On December 16, 1962, at about 1:30 p.m. it was starting to rain a little as Mrs. McHale was driving a Volkswagen car, ordinarily operated by her husband, east on Las Posas Road in Ventura County. A Mr. Gunner, whom she had picked up a short time before and whom she was taking home, occupied the front seat to the right of the driver of the car. Three of Mrs. McHale's children, including Bridget (one of the plaintiffs), occupied the rear seat of the car. Mr. Gunner resided on Loma Drive (which intersects with Las Posas Road) to the north of Las Posas Road. It was therefore necessary for Mrs. McHale to make a left turn off of Las Posas Road onto Loma Drive. The first intersection west of Loma Drive is Beverly Street, which forms a ''T'' intersection with Las Posas Road. The distance between Loma Drive and Beverly Street was in dispute, the testimony ranging in estimates from 300 to 525 feet.

When driving easterly on Las Posas Road, as Mrs. McHale and defendant were doing at the time in question, cars approaching the intersection of Beverly Street and Las Posas Road are confronted with a rise in Las Posas Road which reaches its peak at or near the intersection of Beverly Street and Las Posas Road and thereafter Las Posas Road descends gradually to the intersection with Loma Drive and beyond where it levels out farther east. The exact location of the rise was in dispute.

The testimony with reference to the speeds of the respective cars was in dispute. Mrs. McHale claimed that she passed the crest of the hill traveling at 15 to 20 miles per hour and then gradually came to a stop, or near stop, at Loma Drive. She did state to the police that she was going 5

miles per hour at about the time of the impact. There is no dispute, however, that she gave no hand signal of her intention to turn to the left off of Las Posas Road and onto Loma Drive. She acknowledged that the left directional blinker on the Volkswagen was out of order and that her husband had told her so. Admittedly, she gave no hand signal for an intended stop. A police officer tested the brake light and found the left light not to be working. The Volkswagen had bumper guards of such construction that at least one-fourth of the area of the stop light was obscured. Further, considering the configuration of Las Posas Road, a brake light on the Volkswagen could not be seen, even if in working order, if one were 200 feet, or more, westerly from the intersection of Las Posas Road and Loma Drive.

At the top of the crest of the road, defendant had attained a speed of about 45 to 50 miles per hour, which was within the speed limits. Defendant did not immediately see Mrs. McHale's car when he reached the crest of the road but he did see her a little later. When he saw her, she appeared to be about 100 feet from the Loma Drive intersection. Seeing her, he took his foot off the accelerator of his car and slowed down to about 40 miles per hour. When he was about 125 feet away from her, realizing then for the first time that she intended to make a left turn, he applied his brakes and laid down 78 feet of locked 4-wheel skidmarks. He was unable to bring his car to a complete stop. He estimated that he was going about 10 miles per hour when the left front of his Ford car collided with the right rear of the Volkswagen.

The jury rendered a verdict in favor of defendant. Plaintiffs made a motion for a new trial, which the trial judge denied. We set forth herein in large part his opinion with reference to the motion.[1]

---

[1] "Plaintiffs first argue that the jury's verdict against the minor plaintiff demonstrates that the jury determined that the defendant was not guilty of any negligence which was a proximate cause of the accident, and that this verdict or determination is against the weight of the evidence. Plaintiffs assert that I should not consider whether the jury's verdict was properly supported by evidence of contributory negligence on the part of the adult plaintiffs. I have concluded that I need not determine whether this contention is correct, since I am of the opinion that the jury's verdict is not against the weight of the evidence with reference to the question of the defendant's negligence, entirely apart from any question of contributory negligence on the part of the adult plaintiffs.

"There was substantial evidence from which the jury could have determined the following to be the facts. The defendant was proceeding easterly on Las Posas Road, which was a paved road, and which was wet from the first rain of the season. When he first observed the plaintiffs' volkswagen automobile it was proceeding in the same direction on Las

Appellants now assert that the appeal must be evaluated upon the basis of negligence, alone, disregarding any possible issue of contributory negligence, that the court erred in in-

---

Posas Road at a distance of approximately 200 feet ahead of the defendant. At this time the defendant was proceeding at a rate of approximately 50 miles per hour. The defendant observed that the volkswagen was proceeding at a lesser speed than his vehicle and that it was slowing down. At this point the defendant removed his foot from the throttle of his car, and commenced to slow down from the effect of the compression of his motor on his vehicle. He proceeded for a distance of approximately 200 feet under these conditions, during which time the volkswagen proceeded for a distance of approximately 100 feet on down the road. When the defendant reached a point approximately 100 or 125 feet from the intersection of Las Posas Road with Loma Road his speed was approximately 40 miles per hour. At this point he realized that the plaintiffs' volkswagen intended to make a left turn onto Loma Road, and would come to a stop before completing such turn in order to allow another vehicle coming in the opposite direction to pass through the intersection before completing the left hand turn. In reaching this conclusion as to the intent of the volkswagen driver, the defendant was unaided by any hand, mechanical, or electric light signal on the part of the driver of the volkswagen indicating an intention to make a turn or a stop. Thereupon the defendant determined to and did apply his brakes, which caused the wheels of his vehicle to lock, with the result that he skidded straight ahead and into the volkswagen which was either stopped or barely moving at the intersection. At the time of impact the defendant's car was going approximately 10 miles per hour. There was sufficient room on the highway so that the defendant's car could have safely passed to the right of the plaintiffs' vehicle at the intersection. The defendant was familiar with the road, was aware of the Loma intersection with Las Posas Road, and knew that the damp pavement was more slippery than if the pavement had been dry.

"I find nothing in these facts that compels the conclusion that the defendant was guilty of negligence. I think the crucial question is whether the defendant should have known or anticipated earlier that the plaintiff was going to make a complete stop in order to accomplish a left hand turn at Loma Road. As to this the defendant's conduct must be considered in the light of all of the circumstances. One of these circumstances is the fact that the plaintiff made no signal indicating a turn or an intention to stop. Also, while the defendant was proceeding a distance of 200 feet at a speed which was being reduced from 50 miles per hour to 40 miles per hour, the volkswagen proceeded a distance of approximately 100 feet. From this the jury could have inferred that the volkswagen travelled this distance at an average speed of approximately 20 or 25 miles per hour, which would give no clear indication of an intention on the part of the volkswagen's driver to stop or make a left hand turn at the intersection of Las Posas and Loma Road. While the defendant was aware that the pavement was wet and more slippery than if it was dry, the jury may well have concluded that he had no exact knowledge of the extent of the reduction of the coefficient of friction as between the tires and the pavement. Under such circumstances the jury could reasonably have concluded that the defendant did not act as an unreasonable man in allowing his vehicle to approach within a distance of 100 or 125 feet at 40 miles per hour where the volkswagen appeared to be proceeding at a rate of approximately 20 miles per hour, and had given no signal of intention to turn or stop. The reasonably necessary protective or evasive actions to avoid an accident with a preceding automobile going at the rate of 20 miles per hour as compared to a preceding automobile at a complete stop in the same lane of the highway, are obviously

structing the jury on the doctrine of imminent peril and that it was error to receive into evidence certain motion pictures. We have concluded that there is no merit to any of the contentions.

The jurors were properly instructed that they were to determine the case of each plaintiff separately. ▉ Clearly the judgment against John J. McHale and Mrs. McHale is sustainable upon the grounds, or basis, of their own contributory negligence.

John McHale knew that the left directional blinker of the Volkswagen was not in operating condition. Mrs. McHale knew of the poor mechanical condition of the Volkswagen car, the McHales undoubtedly were aware of the fact that the tail light and stop light of the Volkswagen car were partially obscured by the bumper guards on the rear bumper, Mrs. McHale knew of her intention to turn left at the intersection of Las Posas Road and Loma Drive and downshifted the

---

far different. The jury could have reasonably concluded that the defendant, without fault on his part, was placed in a position of imminent peril when he realized that the volkswagen was intending to make a left hand turn and would stop prior to doing so. Under such circumstances the jury could have concluded that the defendant acted reasonably in applying his brakes rather than taking evasive action by swerving to the right and passing on the right hand side of the volkswagen. In this connection the jury could have taken into consideration the fact that not all friction between automobile tires and pavement is lost when the pavement is wet. Also, the jury had the right to apply its own common sense and to take into consideration the fact that it is a somewhat instinctive reaction to apply the brakes of an automobile when the driver is suddenly confronted with peril. Indeed, the jury might reasonably have concluded that under all the facts and circumstances of this case it would have required more than average skill, training and experience in a driver to have resisted the impulse to apply the brakes, and to have taken the alternative risk of swerving the car to the right on a wet pavement in an effort to avoid the accident.

''Under Code of Civil Procedure § 657 a new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the jury 'clearly' should have reached a contrary verdict. After reviewing the entire record of this case I am not convinced that the jury clearly should have reached a verdict contrary to that which it rendered. There was other conflicting evidence, particularly with reference to the distances and probable speeds from which the jury could have drawn inferences favorable to the plaintiffs. However, the conflict was for the jury to determine and I am unable to say that its determination was clearly wrong.

''Plaintiffs also argue that the court erred in giving the instruction on imminent peril. The argument is that the doctrine of imminent peril is not applicable unless the defendant is placed in a position of peril through no fault of his own. The instruction given clearly stated this condition. From the evidence above outlined, the jury could have reasonably concluded that the defendant was placed in a position of peril through no fault of his own.''

gears from fourth to third to second to first as she approached the intersection but did not recall when she used her brakes in slowing the car, and she affirmatively testified that at no time did she give a hand signal for either slowing down or a left turn.

█ The verdict can be sustained against Bridget McHale, the minor passenger, on at least two theories.

The jury could have found under the evidence that the conduct of Mrs. McHale was the sole cause of the happening of the accident. In other words, the jury could well have found that the collision would not have occurred had Hall been given any adequate warning by way of a proper hand signal by Mrs. McHale indicating her intention to slow down the Volkswagen and to turn her vehicle to the left on Loma Drive prior to the time that she arrived at the point where the collision occurred. Plaintiffs' own expert witness testified that had Hall been given prior notice of Mrs. McHale's intention, he would have had ample time within which to react. Had Hall received or been given prior notice of what Mrs. McHale intended, he could have applied his brakes sooner than he did, or, as plaintiffs' attorney argued, Hall could have swerved and thus avoided the Volkswagen. Furthermore, the jury could have determined that Bridget did not sustain any injuries of any consequence or for which damages could be awarded. One occupant of the car had no feeling of impact. Bridget did not testify and the only testimony in the record with reference to her alleged damages was by a physician who said that he had seen Bridget on the day when he made a first visit to Mrs. McHale, that Bridget had multiple bruises and contusions and he thought that he had suggested that Bridget remain out of school for the rest of that week, that Bridget took some aspirin and there were no other complaints. The jury could have disbelieved the doctor and returned their verdict of no damages. (See *Chaparkas* v. *Webb*, 178 Cal.App.2d 257 [2 Cal.Rptr. 250]; *Demangos* v. *Cannon*, 187 Cal.App.2d 624 [10 Cal.Rptr. 24]; *Gordon* v. *J & L Machinery Services Co.*, 213 Cal.App.2d 711 [29 Cal. Rptr. 263].)

█ Furthermore, the jury could have found from the evidence that Hall was in no respect guilty of negligence. True it is that this was a rear-end collision situation and the doctrine of *res ipsa loquitur* applies in such cases; the jury in this case was in fact instructed on the doctrine and in this regard the jury could well have concluded that Hall was not negligent. (See *Elford* v. *Hiltabrand*, 63 Cal.App.2d 65, 74

[146 P.2d 510]; *Donahue* v. *Mazzoli,* 27 Cal.App.2d 102, 105-106 [80 P.2d 743]; *Witt* v. *Jackson,* 57 Cal.2d 57 [17 Cal. Rptr. 369, 366 P.2d 641]; *Burke* v. *Bloom,* 187 Cal.App.2d 155 [9 Cal.Rptr. 563]; *Clendenin* v. *Benson,* 117 Cal.App. 674 [4 P.2d 616]; *Coppock* v. *Pacific Gas & Elec. Co.,* 137 Cal.App. 80 [30 P.2d 549]; *Davis* v. *Ewen,* 148 Cal.App.2d 410 [306 P.2d 908]; *Demangos* v. *Cannon, supra,* 187 Cal. App.2d 624; *Elliot* v. *Jensen,* 187 Cal.App.2d 389 [9 Cal. Rptr. 642]; *Fletcher* v. *Pierceall,* 146 Cal.App.2d 859 [304 P.2d 770]; *Fueste* v. *Johnson,* 207 Cal.App.2d 790 [24 Cal. Rptr. 827]; *Guttman* v. *Civet,* 161 Cal.App.2d 816 [327 P.2d 232].)

In other words, when one automobile runs into the rear end of another automobile, negligence is a question of fact and not of law. (See *Kralyevich* v. *Magrini,* 172 Cal.App.2d 784, 792 [342 P.2d 903].)

■ With reference to the instructing of the jury on the doctrine of imminent peril, it is to be remembered that each party is entitled to instructions upon his theory of the case in the event there is any evidence to support such an instruction. Instructions, of course, may be based upon reasonable inferences from the evidence. (See *Reynolds* v. *Struble,* 128 Cal.App. 716 [18 P.2d 690]; *Apodaca* v. *Haworth,* 206 Cal. App.2d 209 [23 Cal.Rptr. 461].)

■ In the ordinary case it is a question of fact whether there exists a situation of imminent peril. (See *Leo* v. *Dunham,* 41 Cal.2d 712 [264 P.2d 1]; *Phillips* v. *Treiman,* 249 Cal.App.2d 33, 37 [57 Cal.Rptr. 37].) There was ample evidence upon which to base such an instruction.

■ Lastly, defendant at the trial showed motion pictures of cars proceeding on Las Posas Road in an obvious effort to support the testimony of other witnesses as to distances and what could be observed from a car in a position similar to that of Hall. The objection which was made in the first instance was for all intents withdrawn, for after appellants' attorney took the witness who was to show the pictures on *voir dire* examination, counsel said, ''All right. Show the movies.'' There was no abuse of discretion by the judge in permitting the motion pictures to be shown under the circumstances of this case.

The judgment against each and all of the plaintiffs, and in favor of the defendant, is affirmed.

Wood, P. J., and Lillie, J., concurred.